MOORE, Circuit Judge,
with whom, O’MALLEY and REYNA, Circuit Judges, join, dissenting from the denial of the petition for rehearing en banc.
This Circuit is uniquely responsible under the Tucker Act for Fifth Amendment Takings claims. The majority’s misapplication of Supreme Court Takings jurisprudence creates a bar to relief in cases involving flooding caused by Government action, cases in which established doctrine would otherwise provide Constitutional protection to private property. I respectfully dissent.
The majority in this case precludes the possibility of a takings claim due to flooding caused by “temporary” government action regardless of the duration or severity of the condition. The majority holds that the only potential remedy is in tort. I disagree. An early Supreme Court decision, United States v. Cress, 243 U.S. 316, 328, 37 S.Ct. 380, 61 L.Ed. 746 (1916), handed down well before the development of the concept of ‘temporary takings’ as it is understood today, talked in terms of requiring that for flooding to constitute a taking, it must be “inevitably recurring.” But that does not preclude the possibility that a government action labeled “temporary” could give rise to such “inevitably recurring” flooding. To allow the govern *1381 ment’s “temporary” label for the release rate deviations to control the disposition of this case elevates form over substance and leads to untenable results with enormous future consequences.
The key distinction today is whether the flooding at issue is a one time or incidental event, in which case the consequent injury is characterized as a tort, or whether the injury, substantial over time, is a continuing or recurring one and the predictable consequence of the Government’s conduct. In the latter case, it is a taking. As we have explained: “The tort-taking inquiry in turn requires consideration of whether the effects ... experienced were the predictable result of the government’s action, and whether the government’s actions were sufficiently substantial to justify a takings remedy.” Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed.Cir.2003).
The facts of this case are quite simple. Due to government action that caused eight years of intermittent flooding, the Arkansas Game and Fish Commission (Commission) lost more than $5 million worth of timber. The Court of Federal Claims found that the effects of the flooding were predictable and that the government’s actions were sufficiently substantial to justify a takings remedy. Ark. Game & Fish Comm’n v. United States, 87 Fed.Cl. 594, 623 (2009). There is no error in this decision.
Reversing the trial court’s decision, the majority begins its analysis with an ac-knowledgement of current doctrine: “If particular government action would constitute a taking when permanently continued, temporary action of the same nature may lead to a temporary takings claim.” Ark. Game & Fish Comm’n v. United States, 637 F.3d 1366, 1374 (Fed.Cir.2011) (citing First English Evangelical Lutheran Church of Glendale v. County Of Los Angeles, 482 U.S. 304, 328, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)). The majority goes on, however, to reject current doctrine as inapplicable to flooding cases. Ark. Game, 637 F.3d at 1374-75. The majority states that, unlike other types of takings, flooding due to government action must constitute a “permanent invasion” in order for the landowner to recover. Id.
I do not agree. The distinction is between torts and takings. This does not correlate, as the majority holds, to temporary and permanent. In short, I do not believe that every “temporary” action by the government which causes recurring flooding is compensable only under a tort theory. The majority tells us that to constitute a taking, rather than a tort, there must be substantial damage from “inevitably recurring” flooding. But, under the majority’s rule, there can never be “inevitably recurring” flooding if the government action is temporary.
The majority holds that eight years of release rate deviations resulting in repeated annual overflow flooding (certainly recurring), cannot ever be a taking because each release rate deviation was an individual event with its own start and end date — they were each temporary. Ark. Game, 637 F.3d at 1369 (the release rate deviations were “only for limited periods of time” and “therefore the approved deviations were by their nature temporary.”). Therefore, according to the majority, these release rate deviations do not give rise to the sort of “permanent invasion” required for a taking.
I do not agree. As an initial matter, it is clear that government action which results in only a temporary flooding can be a compensable taking. In United States v. *1382 Dickinson, 331 U.S. 745, 746-47, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), the government constructed a dam that led to persistent flooding on the plaintiffs’ lands. Id. “At considerable expense ... [plaintiff] reclaimed most of his land which the Government originally took by flooding.” Id. at 751, 67 S.Ct. 1382. Although the landowner reclaimed the land, the Supreme Court nevertheless held that the taking was com-pensable. Id. Hence, something less than permanent flooding can constitute a com-pensable taking. The majority agrees that there would have been a compensable taking if the release rate deviations that were passed were permanent, even if they were rescinded years later so that the Commission could reclaim its land.
With all due respect, there is no meaningful difference between that set of facts and this one. The government recognizes this incongruity. Gov’t Resp. to Pet. For Reh. at 7 (“[I]f the Corps had approved a permanent deviation plan and then reversed course ten years later, the situation would at least be much closer to a permanent change constituting a taking.”). As we earlier made clear:
[T]he government when it has taken property by physical invasion could subsequently decide to return the property to its owner, or otherwise release its interest in the property. Yet no one would argue that that would somehow absolve the government of its liability ... All takings are ‘temporary’ in the sense that the government can always change its mind at another time.
Hendler v. United States, 952 F.2d 1364, 1376 (Fed.Cir.1991). If a flowage easement which is terminated after eight years can be a compensable taking, why can’t an eight year flowage easement or eight consecutive one year flowage easements?
Under the majority’s rule, even if the government enacted 50 consecutive one year release rate deviations — such that the flooding had inevitably recurred for 50 years — these would still be temporary and no taking could be found. The Supreme Court has held that “it is the character of the invasion ... that determines the question of whether it is a taking.” Cress, 243 U.S. at 328, 37 S.Ct. 380. The fact finder must be able to, with the benefit of hindsight, determine the character of an invasion and find that the result is flooding that is “inevitably recurring.” The author of the majority in this case agrees that 50 one-year deviations could amount to a taking because of their character of permanence. Concurrence at 1381-82. With all due respect, the question of whether eight years of deviations are similarly adequate is best left to the fact finder — the Court of Federal Claims. I cannot hinge the entire takings analysis, as the majority does, on the government’s chosen label for the action — temporary or permanent.
The distinction between tort and takings in the flooding cases is not as easy as saying one flood is a tort and any more than that a taking. Nor is it as simple as the majority would have it — if the government action turns out to have had a limited duration it cannot be a taking. As our predecessor court explained:
The Government has been liable where the construction of a dam or other obstruction in a stream results in either permanent flooding or a ‘permanent liability to intermittent but inevitably recurring overflows.’ But the courts have held that one or two or three floodings by themselves do not constitute a taking. The plaintiff must establish that flooding will ‘inevitably recur’, in the phrasing of the Cress case. *1383 The distinction between ‘permanent liability to intermittent but inevitably recurring overflows,’ and occasional floods induced by governmental projects, which we have held not to be takings is, of course, not a clear and definite guideline.
Nat’l By-Products, Inc. v. United States, 405 F.2d 1256, 1273, 1274 (Ct.Cl.1969) (citations omitted). Here there were eight years of inevitably recurring flooding caused by governmental action which has now been brought to an end. I think the Court of Federal Claims properly analyzed the eight years of release rate deviations and the recurring flooding that these caused and determined that the character of this government action — this repeated, consistent flooding — constituted a taking.
Determining whether the government action in question is a tort or a taking requires a flexible case-by-case approach considering the character of the government action as a whole, the nature and extent of the flooding that was caused and the resultant damage that occurred. The Court of Federal Claims did just that. By contrast, the majority adopted a rigid, unworkable and inappropriate black letter rule — if the government action which causes flooding and substantial damage to a property holder is of limited duration it can never be a taking.
Because we miss the opportunity to correct this error of law, I respectfully dissent from the denial of en banc.